## 19329

The STATE, Respondent, v. Alonzo CASH and Marvin McNeil, Appellants

(185 S. E. (2d) 525)

*Messrs. Joseph M. Thompson, Jr., Esq.,* of Charleston Heights, and *Barry Krell, Esq.,* of Charleston, *for Appellants,* cite:

*Messrs. Robert B. Wallace, Sol.* and *A. Arthur Rosenblum, Asst. Sol.,* of Charleston, *for Respondent,* cite:

December 2, 1971.

Moss, Chief Justice:

The record shows that on July 16, 1969, the GEX Liquor Store located in the Union Heights Section of Charleston

County was robbed by three unmasked Negro males, at approximately 1:45 p.m., each of whom was armed with a pistol and more than $1,000 was taken from the cash register.

Alonzo Cash and Marvin McNeil, the appellants herein, and William Creel were indicted and tried before the Honorable James B. Morrison, presiding judge, and a jury, at the 1969 September Term of the Court of General Sessions for Charleston County for such armed robbery.

The jury returned a verdict of guilty as to the appellants and a verdict of not guilty as to William Creel. From the rulings of the trial judge, this appeal is prosecuted.

The evidence in behalf of The State consisted of eyewitness identification by two employees of the liquor store where the offense occurred. The defense was alibi. Each of the appellants and Creel testified that he was elsewhere at the time of the offense and presented witnesses to support their alibi.

It is undisputed that at the time of the robbery there was present in the liquor store F. W. Ohlandt, Jr., the owner thereof, and Joseph Leppard, an employee of the store. It appears that eight days after the robbery the police carried a set of seven photographs to the store which had been robbed. This set of photographs contained pictures of Cash and Creel. Ohlandt and Leppard separately identified Cash as one of the participants in the robbery. On the following day, another series of twelve photographs was submitted to Ohlandt and Leppard and each separately identified McNeil as a participant in the robbery.

As a result of the photograph identification, Cash was arrested and on July 25, 1969, a line-up was held at the police station. Creel was present in the line-up which was made up of six colored males of approximately the same size and age, all being dressed alike in prison uniforms. Prior to the aforesaid line-up, Cash was asked by the police if he had an attorney and if he wanted one present at the line-up. Cash

named as his attorney a member of the Charleston Bar. He was given an opportunity to call this attorney on the telephone but was unable to reach him and he so advised the police. Cash did not advise the police that he was represented by his present counsel. Cash agreed to stand in the line-up.

It further appears that the police had previously been instructed, as a set procedure, to call an assistant county attorney to be present at any line-up if the suspects did not have an attorney. If a county attorney was not available the police obtained the services of any other attorney who could be contacted. Prior to the holding of the line-up, the officers attempted to contact two assistant county attorneys, neither of whom was available and so a practicing attorney of the Charleston Bar, who prior to becoming an attorney was a police officer, was called to be present at the line-up to represent Cash and Creel. At the line-up, Ohlandt identified Cash and Creel as two of the participants in the robbery of the liquor store.

Thereafter, the appellant McNeil was arrested and placed in a line-up at the police station made up of colored males of approximately the same size and age, all being dressed alike in prison uniforms. McNeil advised the police that he did not want an attorney and would voluntarily appear in the line-up. However, in accordance with their established procedure, an assistant county attorney was contacted and was present at the line-up. The witness Ohlandt identified McNeil as a participant in the robbery of the liquor store. Leppard did not attend either line-up.

When the State offered testimony to identify the appellants as participants in the robbery, they objected on the ground that their pretrial line-up identification by the prosecuting witness deprived them of rights guaranteed to them under the United States Constitution. The Supreme Court of the United States has held that an out-of-court identification of an accused at a police line-up is a critical stage at

which the accused has a constitutional right to the assistance of counsel. *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. (2d) 1149, and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. (2d) 1178. The appellants contend that they were denied their constitutional rights to counsel at the line-ups conducted by the police, when the lawyers present to represent them were not counsel of their choosing for their defense. They assert that under the *Wade* decision the subsequent in court identification was tainted and the fruit of an illegal line-up, hence inadmissible as evidence.

When the State offers witnesses whose testimony tends to identify the appellants as the person who committed the crime charged in the indictment and they interpose timely objections challenging that the in court identification by the witness is tainted by an illegal line-up, the trial judge should conduct a hearing in the absence of the jury and the competency of the evidence should be evaluated. In such hearing, the testimony should be taken and all factual questions determined including those involving the appellant's constitutional rights pertinent to the admissibility of the proffered evidence. Here, the trial judge, in the absence of the jury, conducted such a hearing and he found, beyond a reasonable doubt, that the line-ups met the requisites set forth in the *Wade* case and the appellants had the assistance of counsel at the line-ups. He further found that the line-ups were properly conducted and that the appellants made no effort to show otherwise. The trial judge also found that the attorneys representing the appellants at the line-up were not called as witnesses nor was there any other evidence offered to show that there was any impropriety in the way the line-ups were conducted.

There is evidence in the record from which it can be concluded that each of the appellants consented to stand in the line-up. The appellants were represented at the line-ups by counsel called by the police. There is no contention that the attorneys so called improperly

represented the appellants. Even though counsel appearing at the line-ups in behalf of the appellants might be classified as "substitute counsel", we conclude that it was not erroneous for the trial court to conclude that the appellants were properly represented. The *Wade* case, which established the right of counsel at the line-up, explicitly contemplates the use of substitute counsel. We think that the use of substitute counsel at the line-ups has considerable advantage favorable to the appellants. If for any reason there should be reason for testimony on behalf of the defense at the trial as to the circumstances surrounding the line-ups, the use of substitute counsel would avoid the predicament of using defense trial counsel as a witness. Whether the appellants suffered prejudice by reason of being represented by substitute counsel, presented an issue of fact for determination by the lower court and such issue having been decided adversely to the appellant, we are limited in our review to a determination of whether there was evidence to sustain the findings made by the trial judge. The trial judge has found that the appellants suffered no prejudice by reason of their representation by substitute counsel. There is evidence to sustain this finding. *Ross v. State,* 250 S. C. 442, 158 S. E. (2d) 647.

Assuming, however, that the appellants were not properly represented by substitute counsel at the line-ups and that the admission of Ohlandt's line-up identification was error, we conclude that the error was harmless. Ohlandt's identification of the appellants as participants in the robbery was unequivocal. He stated that apart from the photographs that he had examined and forgetting the line-ups that he witnessed, he could absolutely identify the apellants as the ones who robbed the liquor store. It follows that Ohlandt's in court identification of the appellants had a source independent of the photographs and the line-ups and was therefore admissible evidence and sufficient to sustain the convictions of the appellants.

The witness Leppard was not present at either line-up but testified in the trial of the case as to his identification

of the photographs of the appellants. He identified each of the appellants in open court and described the part played by each in the holdup. It is well to point out that Ohlandt and Leppard were sequestered during the trial so that their testimony was obviously uninfluenced by each other.

The appellants do not contend that the photographic identification procedure here employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. The in court identifications of the appellants by Ohlandt and Leppard were of independent origin and untainted by the photographic identification. Cf *Simmons v. United States*, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. (2d) 1247.

It appears from the record that during the investigation of this robbery the witnesses Ohlandt and Leppard were shown a series of photographs of possible suspects including those of the appellants. In *State v. Harvey*, 253 S. C. 328, 170 S. E. (2d) 657, we stated that the appellants were not entitled to have counsel during the viewing of the photographs by these witnesses.

During an overnight recess, two members of the jury read a press report concerning this trial. The article in question read as follows:

"Ohlandt said that he identified McNeil in a batch of pictures given him by county police and later identified him in a line-up. He picked out Cash from another set of mug shots and when he attended a lineup he saw both Cash and Creel on the end of a line of persons dressed in prison garb."

The appellants moved for a mistrial on the ground that the aforesaid article was prejudicial to them.

The general rule is that a juror's reading of a newspaper account of the trial will not be ground for a new trial, mistrial, or reversal where the account contains nothing which is of an unfair nature or prejudicial to the defendant. 31 A. L. R. (2d) Page 422. The burden

was upon the appellants here to show prejudice, and whether the burden was sustained is a matter to be determined by the trial court in the exercise of its discretion. *Marshall v. United States,* 360 U. S. 310, 79 S. Ct. 1171, 3 L. Ed. (2d) 1250.

Counsel asserts that the article stated that the persons in the line-up were "dressed in prison garb." The testimony, to which no objection was taken, was to the effect that at both line-ups all of the persons, including the appellants, were dressed in prison uniforms. It follows that no possible prejudice could come from the article published in the newspaper because the jurors already knew from the evidence that the appellants were so dressed.

The other claim of prejudice relates to the fact that the newspaper article says that the appellants were identified from "mug shots." Testimony is that the police officers selected a number of photographs of possible suspects, including the photographs of the appellants, and submitted such photographs to the witnesses Ohlandt and Leppard. It is admitted that the witnesses identified the appellants from these photographs. These photographs were identified during the trial, in the presence of the jury, and all witnesses were examined and cross examined concerning the photographs even though they were not admitted into evidence because of certain writings on said photographs.

At the request of counsel for the appellants, the trial judge inquired of the jury as to whether they had read the newspaper article in question. Two jurors stated that they had read the article. These jurors were questioned by the trial judge in the absence of the other jurors. One said that he had read the article but he did not remember its contents and the other admitted reading the article and did not observe anything in the article that would prejudice her thinking toward the appellants. The trial judge found that in the light of the jurors' statements there was no prejudice to the appellants. He also cautioned them not to consider anything contained in the newspaper article in reaching their verdict.

The appellants have not borne the burden of showing that the article in question was prejudicial to them nor is there any showing that the judge abused his discretion in ruling that there was no prejudice to the appellants. In view of the ruling of the trial judge and his cautionary instructions to the jury, we must assume that each and every member of the jury sought honestly and impartially, under the law, to discharge his duty; and that he observed the oath required of a juror. *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607.

The exceptions of the appellants are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.