561 S.E.2d 618

The STATE, Respondent,

v.

Lionel CHEATHAM, Appellant.

No. 3453.

Court of Appeals of South Carolina.

Heard Feb. 6, 2002.
Decided Feb. 25, 2002.
Rehearing Denied April 18, 2002.

Assistant Appellate Defender Katherine Carruth Link, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney Gen-

eral Christie Newman Barrett, all of Columbia; and Solicitor Ralph E. Hoisington, of North Charleston, for respondent.

ANDERSON, Judge:

Lionel Cheatham was convicted of first degree burglary and sentenced to twenty years imprisonment. He raises three issues on appeal. We remand, finding the trial court erred in refusing to conduct a pretrial hearing on identification matters.

## FACTS/PROCEDURAL BACKGROUND

At approximately 7:30 p.m. on February 9, 1999, the victim, Kalpna Patel, and her infant were in their apartment. The sliding glass door on the patio was left slightly open to allow a breeze into the apartment. Patel heard a noise and saw a man enter her apartment through the sliding glass door. The man attempted to hide his face with a pillow. Patel fought with the man. During the struggle, Patel was able to see the intruder's face briefly. Patel recognized the man as someone who had previously come into her store. The intruder grabbed Patel's purse from her dining room table and ran away. The purse contained $500 in cash receipts from the business owned by Patel and her husband.

The intruder was described in the police report taken after the incident as a Hispanic male, six feet two inches tall, weighing approximately 190 pounds, with brown hair, a round face, and between 20 and 30 years old. The police report did not indicate whether the intruder had a mustache or the color of the intruder's eyes. Patel testified at trial she never described the intruder as Hispanic. According to Patel, she informed police that he was a tall, well-built, light-skinned man of both Caucasian and African American descent, aged in his late thirties to forties, with dark hair, a round face, a mustache, and brown eyes. No fingerprint evidence was recovered at the scene that linked Cheatham to the crime.

Patel's neighbor, Tim Nates, saw the intruder in the parking lot before the burglary and watched him run away from Patel's apartment clutching an object. Both Patel and Nates picked Cheatham's picture out of a photographic lineup.

Cheatham did not dispute that Patel was robbed, but argued at trial he was not the perpetrator. Persephone Brown testified she was a former co-worker of Cheatham's wife, Cynthia, and attended church with Cynthia until Brown moved. Brown averred that on the evening of the burglary, she got off work at 8:00 p.m. and went to a Bi Lo grocery store to purchase a few items. As she exited the store at approximately 8:15 p.m., she encountered both Cheatham and Cynthia in the parking lot approaching the store. She spoke with Cynthia for approximately thirty minutes.

Cynthia also testified. She stated she had specific recollections of February 9, 1999, because she wrote a check to Cheatham's employer as a loan to help expand his catering business. Later that day, Cynthia came home from her job at 4:00 p.m. and relaxed with Cheatham. The couple then discussed dinner and decided Cynthia should make spaghetti. At 6:00 p.m., the couple went to a Blockbuster video store to return movies they had rented and then traveled to a Publix grocery store to buy the ingredients to make spaghetti. According to Cynthia, she and Cheatham then traveled across town to her mother's house to help tutor her nephew. After leaving Cynthia's mother's house, Cheatham and Cynthia decided they also wanted garlic bread to go with the spaghetti they were going to make for dinner. They went to the Bi Lo near Cynthia's mother's house, where they encountered Brown at approximately 8:15 p.m. Cynthia testified Cheatham was with her the entire evening.

## ISSUES

I.   Did the trial court err in admitting Cheatham's prior burglary and housebreaking convictions?

II.  Did the trial judge err in refusing to recuse himself?

III. Did the trial court err in refusing Cheatham's motion for a pretrial hearing on matters of identification?

## LAW/ANALYSIS

### I. Admission of Prior Burglary Convictions

Cheatham argues the trial court erred in allowing the admission of his prior burglary and housebreaking convictions

when he stipulated to one of the elements of first degree burglary. We disagree.

Prior to being charged with burglary in the underlying case, Cheatham was convicted of housebreaking in 1978, second degree burglary in 1987, and second degree burglary in 1991. The indictment for first degree burglary in this action alleged Cheatham: (1) entered into Patel's dwelling in the nighttime; and (2) had a prior record of two or more convictions for housebreaking or burglary. Cheatham filed a motion *in limine* requesting the State be prohibited from introducing his prior convictions because it would be unfairly prejudicial and he would stipulate the burglary occurred in the nighttime. The State refused to stipulate the burglary occurred at the nighttime and the trial court denied the motion. The trial judge instructed the jury that the prior convictions must only be considered to determine whether an element of first degree burglary was satisfied and they could not consider the prior convictions as evidence that Cheatham committed the burglary of Patel's home.

The trial court has great discretion in ruling on the admissibility of evidence in a criminal case. *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Hamilton*, 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001). A trial judge's ruling on the admissibility of evidence will not be reversed on appeal absent a prejudicial abuse of discretion amounting to an error of law. *Id.*

The General Assembly has defined first degree burglary, in part, as follows:

(A) A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:

. . . .

(2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

(3) the entering ... occurs in the nighttime.

S.C.Code Ann. § 16–11–311 (Supp.2001).

Evidence of other crimes is admissible to establish a material fact or element of the crime charged. *State v.*

*Benton,* 338 S.C. 151, 526 S.E.2d 228, *cert. denied sub nom., Benton v. South Carolina,* 530 U.S. 1209, 120 S.Ct. 2209, 147 L.Ed.2d 242 (2000); *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987).

Our courts have repeatedly considered the admission of prior burglary convictions to support an element of first degree burglary.

In *State v. Hamilton,* 327 S.C. 440, 486 S.E.2d 512 (Ct.App. 1997), this Court held that under § 16–11–311(A)(2), "prior burglary or housebreaking convictions are clearly an element of burglary in the first degree." *Id.* at 446, 486 S.E.2d at 515. As such, the prosecution in *Hamilton* was entitled to present evidence relevant and material to that element of the offense, despite our "well-established rule that evidence that an accused has committed other crimes is not admissible in the prosecution for the crime charged." *Id.* at 447, 486 S.E.2d at 515 (citation omitted). The Court reasoned that the prosecution could not be forced to stipulate generally to the prior offenses or to the fact that the defendant had the legal status to be charged with first degree burglary because such stipulation might cause a substantial gap in the evidence needed for the jury to find the defendant guilty of the offense. *Id.* at 446, 486 S.E.2d at 515.

The *Hamilton* Court analyzed the prejudicial impact of the evidence:

[H]ad the South Carolina General Assembly wished to use the prior convictions as merely a sentence enhancer rather than as an element of the crime, it could have done so…. Certainly, a cogent argument can be made that the statute contravenes the well-established rule that evidence that an accused has committed other crimes is not admissible in the prosecution for the crime charged. Rule 404(b), SCRE; *State v. Gregory,* 191 S.C. 212, 220, 4 S.E.2d 1, 4 (1939); *State v. Williams,* 31 S.C.L. (2 Rich.) 418, 421–22 (1846). It is not this court's province, however, to question the wisdom of a legislative enactment.

Finally, Appellant asserts it was error to allow proof of the prior burglary offenses because the evidence was not admissible under any of the exceptions recognized in *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). Appellant's

argument is misplaced, however, since the State did not offer proof of his prior burglary convictions to establish motive, intent, identity, or common scheme or plan. Here, Appellant's prior burglary convictions were presented solely to prove an element of the crime for which he was charged. Evidence which is logically relevant to a material element of the offense charged should not be excluded merely because it may also show guilt of another crime. *See State v. Tillman,* 304 S.C. 512, 518, 405 S.E.2d 607, 611 (Ct.App. [ 1991] ), *cert. denied,* (Sept. 5, 1991).

*Id.* at 447, 486 S.E.2d at 515–16 (footnote omitted).

Our Supreme Court recently discussed this issue in *State v. Benton,* 338 S.C. 151, 526 S.E.2d 228 (2000). The Court rejected a claim that " '§ 16–11–311(A)(2), as interpreted in *State v. Hamilton,*' " unconstitutionally deprives defendants of due process of law " 'because evidence required to prove the status element of prior convictions dilutes the State's burden of proof with respect to the remaining elements of the offense.' " *Id.* at 154, 526 S.E.2d at 229. In concluding the statute did not facially violate due process, the Court explained:

To deter repeat offenders, the General Assembly chose to include two or more prior burglary and/or housebreaking convictions as an element of first degree burglary. The United States Supreme Court has held this is a valid state purpose which does not violate due process. We agree.

*Id.* at 154, 526 S.E.2d at 230 (internal citation omitted).

Cheatham contends that a Rule 403 analysis negates the admissibility of his previous convictions. *Benton* states:

[W]e note evidence of other crimes is admissible to establish a material fact or element of the crime charged. *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987).... For purposes of an element of first degree burglary under § 16–11–311(A)(2), we conclude the probative value of admitting the defendant's prior burglary and/or housebreaking convictions is not outweighed by its prejudicial effect. Rule 403, SCRE.

Further, while generally inadmissible, propensity evidence is not prohibited. Propensity evidence is admissible if offered for some purpose other than to show the accused is a bad person or he acted in conformity with his prior

convictions. Rule 404, SCRE (evidence of other crimes is not admissible to prove character to show action in conformity but to show motive, absence of mistake or accident, intent, identity, the existence of common scheme or plan). Here, appellant's two prior burglary convictions were offered to prove a statutory element of the current first degree burglary charge, not to suggest appellant was a bad person or committed the present burglary because he had committed prior burglaries.

*Id.* at 155–56, 526 S.E.2d at 230 (footnote omitted).

More recently in *State v. James,* 346 S.C. 303, 551 S.E.2d 591 (Ct.App.2001), *cert. granted,* this Court considered whether the introduction of the defendant's seven prior burglary convictions to satisfy the "two or more prior convictions" element of first degree burglary was error. We noted the State cannot be forced to "stipulate generally to the prior offenses or to the fact that the defendant had the legal status to be charged with first degree burglary because such a stipulation might cause a substantial gap in the evidence needed for the jury to find the defendant guilty of the offense." *Id.* at 307, 551 S.E.2d at 592 (*citing Hamilton,* 327 S.C. at 446, 486 S.E.2d at 515). Because the State must prove all the elements of first degree burglary and the statute did not limit the number of prior burglary convictions admitted to two, we held there was no error in admitting seven of the defendant's prior burglary convictions. *Id.* at 307–09, 551 S.E.2d at 592–94.

Cheatham argues evidence of his prior burglary and housebreaking convictions was unduly prejudicial and should not have been admitted to show an element of first degree burglary because he was willing to stipulate to the alternate "nighttime" element. It is well settled the admission of prior burglary or housebreaking convictions for limited consideration as an element of first degree burglary does not constitute undue prejudice. Thus, the admission of Cheatham's prior burglary and housebreaking convictions as an element of first degree burglary does not constitute unfair prejudice in this case. Further, the trial judge specifically instructed the jury not to consider Cheatham's prior convictions as evidence of the Patel burglary and to limit their consideration of the

prior convictions to whether an element of first degree burglary was proven. We find no error in the admission of the convictions because the trial court took every precaution to prevent the improper consideration of Cheatham's convictions and to guard against undue prejudice.

Moreover, we find no merit to Cheatham's assertion that because he was willing to stipulate to the "nighttime" element of first degree burglary, the State should have been limited to proving only the "nighttime" element and it was unnecessary for the State to present any evidence of the "two or more convictions of burglary or housebreaking" element. As previously discussed, the State is not required to accept a defendant's stipulation of proof because the State still bears the burden of proving every element of a crime beyond a reasonable doubt. *See id.* at 307, 551 S.E.2d at 592. Despite Cheatham's attempt to stipulate that he met the legal status to be charged with first degree burglary, we believe the trial court did not err in denying his request to limit the State to proof of only the "nighttime" element.

## II. Recusal of the Trial Judge

Cheatham contends the trial judge erred by failing to recuse himself from presiding over the trial where a previous circuit judge had made rulings in Cheatham's favor. We disagree.

Cheatham's trial was originally scheduled for the week of October 11, 1999, before the Honorable Markley Dennis, but the case was not called.

Prior to the commencement of Cheatham's trial on November 10, 1999, before the Honorable Luke Brown, Cheatham complained the solicitor was "judge shopping" and moved to have the case heard before Judge Dennis. Cheatham asserted that an informal conference was held on October 12, 1999, before Judge Dennis. Judge Dennis had agreed to suppress the introduction of Cheatham's prior burglary and housebreaking convictions because Cheatham was willing to stipulate the burglary occurred in the nighttime. According to Cheatham, the solicitor then informed Judge Dennis the State would not call Cheatham's case to trial before the judge based on the judge's announced intention to exclude the prior convic-

tions. Cheatham submitted the affidavit of one of his attorneys recounting the discussion before Judge Dennis.

The State did not deny that Judge Dennis' off-the-record intimations that he would bar the admission of the prior convictions influenced its decision not to call the case in front of Judge Dennis. However, the State refuted Cheatham's contention that it was "judge shopping" and noted the case was placed on the next docket. Judge Brown denied Cheatham's motion to postpone the trial until it could be heard before Judge Dennis.

Cheatham argues Judge Brown erred in refusing to recuse himself because the solicitor's actions violated due process and amounted to an abuse of his prosecutorial discretion. We disagree.

It is well settled judges should recuse themselves where questions of impartiality or impropriety are raised. This Court recently addressed the disqualification of judges in *Parker v. Shecut*, 340 S.C. 460, 531 S.E.2d 546 (Ct.App.2000), *cert. granted:*

> The Code of Judicial Conduct requires a judge to "disqualify himself in a proceeding in which his impartiality might reasonably be questioned." Canon 3(C)(1) of the Code of Judicial Conduct, Rule 501, SCACR. A judge must exercise sound judicial discretion in determining whether his impartiality might reasonably be questioned. *Christy v. Christy*, 317 S.C. 145, 452 S.E.2d 1 (Ct.App.1994). Absent evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal. *Ellis v. Procter & Gamble Dist. Co.*, 315 S.C. 283, 433 S.E.2d 856 (1993). It is not enough for a party seeking disqualification to simply allege bias. The party must show some evidence of bias. *Christensen v. Mikell*, 324 S.C. 70, 476 S.E.2d 692 (1996); *Mallett v. Mallett*, 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996). Furthermore, the alleged bias must be personal, as distinguished from judicial, in nature.

*Id.* at 497, 531 S.E.2d at 566.

Cheatham's case was never called before Judge Dennis and the informal discussion with the judge concerning evidentiary matters was not on the record. We find Judge

Dennis' comments regarding the evidence merely amounted to his initial impressions and did not constitute an order. Further, if Judge Dennis had issued a pretrial order granting the suppression of Cheatham's prior burglary convictions, the State had the remedy of immediately appealing the decision. *See State v. McKnight*, 287 S.C. 167, 337 S.E.2d 208 (1985) (holding appellate courts may immediately review a pretrial order granting the suppression of evidence that significantly impairs the prosecution of a criminal case), *cited in State v. Mabe*, 306 S.C. 355, 412 S.E.2d 386 (1991). However, because Judge Dennis did not issue any order in the case and merely indicated his inclinations on the admission of evidence, there was nothing for the State to appeal.

Further, Cheatham does not assert Judge Brown was partial, biased, or acted improperly in presiding over his trial. Cheatham has not provided any evidence that would support his allegation that Judge Brown should have recused himself. The only person Cheatham accuses of impropriety is the solicitor for refusing to call the case before Judge Dennis. Whether the solicitor acted improperly in choosing not to call the case before Judge Dennis did not affect Judge Brown's ability to preside over Cheatham's case. Accordingly, we find no error in the failure of Judge Brown to recuse himself.

### III. Right to Pretrial Hearing on Identification

Cheatham asserts the trial court erred in refusing to grant him a pretrial hearing on identification matters. We agree.

During pretrial motions, Cheatham moved for a hearing concerning his identification outside the presence of the jury, pursuant to *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *State v. Washington*, 323 S.C. 106, 473 S.E.2d 479 (Ct.App.1996), and Rule 104(c), SCRE. The trial judge responded to Cheatham's request by declaring: "Well, as I stated on yesterday, you've got to give me something a little more because I don't want to try this case twice. Have you got me something that you know of that makes the lineup unfair and prejudice [sic]?" Cheatham pointed out problems with the witness identifications because Cheatham was a 40 year old black male, not a 20 to 30 year old Hispanic male as described in the police report. Cheatham further argued the

photographic lineup shown to Patel and Nates was suggestive. The trial court denied Cheatham's motion for a hearing:

Cheatham's Counsel: Your Honor, is it my understanding then that you're going to let the ID issue be resolved by the jury?

The Court: I am unless I change my mind during the examination. I just don't want to go through it twice.

Cheatham's Counsel: I understand.

The Court: But you can make your motion afterwards. You can make another motion. I'm just going to hold it in abeyance. I'm going to deny it at this time, but I'll let you remake your motion after that at any time.

Cheatham's Counsel: I understand that's your ruling, Your Honor, but I would—I believe that Rule 104(c) would actually give me the right to a pre-trial hearing on the issue.

The Court: No, sir. In the discretion of the Court.

During Patel's testimony, Cheatham renewed his objections regarding Patel's identification of Cheatham and the photographic lineup and noted he was never informed Patel had been shown a total of three photo lineups. A bench conference was held and Cheatham was later permitted to place his arguments on the record outside the presence of the jury. Cheatham averred the photographic lineup was unreliable because it was suggestive. The trial court held the photographic lineup was not suggestive. Cheatham continued to object throughout the trial to testimony regarding identification. Finally, after hearing all the testimony regarding the photographic lineup and identification of Cheatham, the trial judge informed the parties he found neither the "the conduction of the lineup" nor "the pictures themselves" suggested Cheatham was the suspect.

Our courts have repeatedly addressed a defendant's right to have evidentiary hearings outside the presence of the jury. In *State v. Cash*, 257 S.C. 249, 185 S.E.2d 525 (1971), the defendant was charged with burglary and objected to testimony regarding the identification of him as the perpetrator. The *Cash* Court held:

When the State offers witnesses whose testimony tends to identify the appellants as the persons who committed the

crime charged in the indictment and they interpose timely objections challenging that the in court identification by the witness is tainted by an illegal line-up, *the trial judge should conduct a hearing in the absence of the jury and the competency of the evidence should be evaluated.* In such a hearing, the testimony should be taken and all factual questions determined including those involving the appellant's constitutional rights pertinent to the admissibility of the proffered evidence.

*Id.* at 253, 185 S.E.2d at 526–27 (emphasis added).

In *State v. Simmons,* 308 S.C. 80, 417 S.E.2d 92 (1992), the defendant argued a witness' identification of him was tainted because the witness was present at the defendant's prior bond hearing. The defendant requested an *in camera* hearing to determine whether the witness' identification testimony was admissible. The trial judge denied the motion for an *in camera* hearing. Citing *Cash* for the notion that a defendant is entitled to an *in camera* hearing, if requested, when he or she challenges the "in-court identification as being tainted by a previous illegal identification," the *Simmons* Court held:

In *State v. Cash,* 257 S.C. 249, 185 S.E.2d 525 (1971), this Court adopted a *per se* rule requiring the court to hold an *in camera* hearing when the state offers witnesses whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification. *Contra Watkins v. [Sowders],* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981). The lower court refused to hold a hearing. This error warrants reversal.

We hold that the denial of the motion to suppress was error. *It does not follow, however, that Simmons is entitled to a new trial. We remand the case in order for the trial judge to hold a hearing to determine whether, under the circumstances of this case, [the witness'] identification of Simmons was so tainted as to require its suppression at trial.* Should it be determined upon an *in camera* hearing, that the in-court identification of Simmons was not of independent origin but was the tainted product of the circumstances surrounding the bond hearing, it will follow as a matter of course that Simmons is entitled to a new trial.

*Id.* at 82–83, 417 S.E.2d at 93–94 (emphasis added) (internal citation omitted).

Effective September 3, 1995, preliminary questions of evidence in South Carolina are governed by Rule 104, SCRE. Rule 104 provides:

**(a) Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**(b) Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

**(c) Hearing of Jury.** Hearings on the admissibility of confessions or statements by an accused, and *pretrial identifications of an accused shall in all cases be conducted out of the hearing of the jury.* Hearings on other preliminary matters shall be so conducted when the interests of justice require, or when an accused is a witness and so requests.

**(d) Testimony by Accused.** The accused does not, by testifying upon a preliminary matter, become subject to cross-examination as to other issues in the case.

**(e) Weight and Credibility.** This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

(emphasis added).

The Note following Rule 104 states:

Subsection (c) modifies the federal rule by adding the phrase "or statements made by an accused, and pretrial identifications of an accused." This addition is made to emphasize the fact that hearings on the admissibility of all statements made by a criminal defendant, whether inculpatory or exculpatory, must be made outside the presence of the jury. *State v. Primus,* 312 S.C. 256, 440 S.E.2d 128 (1994); *State v. Lee,* 255 S.C. 309, 178 S.E.2d 652 (1971). The addition also requires all hearings regarding the admis-

sibility of pretrial identifications (to include any assertion that an in-court identification should be excluded as a result of a pretrial identification) to be heard outside the presence of the jury. *State v. Simmons,* 308 S.C. 80, 417 S.E.2d 92 (1992).

Our courts have further addressed this issue since the enactment of the South Carolina Rules of Evidence. In *State v. Smith,* 336 S.C. 39, 518 S.E.2d 294 (Ct.App.1999), this Court noted:

> Where there is an issue as to whether or not an in-court identification by a witness is of independent origin and based upon observations of a suspect other than in the course of any improper confrontation or line-up, the defendant is entitled to an *in camera* hearing. *State v. Williams,* 258 S.C. 482, 485, 189 S.E.2d 299, 300 (1972). Thus, our supreme court has "adopted a *per se* rule requiring the court to hold an *in camera* hearing when the state offers witnesses whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification." *State v. Simmons,* 308 S.C. 80, 82–83, 417 S.E.2d 92, 93 (1992) (citing *State v. Cash,* 257 S.C. 249, 185 S.E.2d 525 (1971)).

*Id.* at 43, 518 S.E.2d at 296.

More recently in *State v. Ramsey,* 345 S.C. 607, 550 S.E.2d 294 (2001), the defendant was charged with murder. Evidence linking him to the crime included: (1) the defendant's sweater, which was similar to the one witnesses claimed the murderer was wearing; (2) the victim's blood found on the defendant's boots and sweater; (3) tire impressions taken from the crime scene; and (4) witness identification of the defendant from a photographic lineup. The defendant requested, but was denied an *in camera* hearing regarding the photographic lineup. On appeal, the Supreme Court ruled:

> Where identification is concerned, the general rule is that a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime, and the defendant

challenges the in-court identification as being tainted by a previous, illegal identification or confrontation.

*Id.* at 613, 550 S.E.2d at 297 (citation omitted).

Noting the defendant did not object to other identification testimony, the Supreme Court held the error in failing to hold the *in camera* hearing was harmless. *Id.* at 613–14, 550 S.E.2d at 297–98.

Rule 104(c) unambiguously mandates hearings on the admissibility of out of court identifications of the accused shall in all cases be held outside the presence of the jury. The adoption of Rule 104 did not abrogate the viability of the rulings in the pre-Rules of Evidence cases. The *in camera* hearing required by Rule 104(c) allows a defendant to question a witness more stringently regarding possible misidentification or bias outside the presence of the jury. If the defendant is required to question a victim/witness regarding photographic identification only in the jury's presence, the defendant may be required to severely curtail the questioning so as not to inflame the jury. The trial court erred by denying Cheatham an *in camera* hearing on the admissibility of the identification from the photographic lineup.

In *State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992), the Supreme Court noted that "under certain circumstances, if the identification is corroborated by either circumstantial or direct evidence, then the harmless error rule might be applicable." *Id.* at 83, 417 S.E.2d at 94 (citation omitted). Under the circumstances of this case, we find the error was not harmless. Cheatham's defense included an alibi. Unlike the defendant in *Ramsey*, the only evidence linking Cheatham to the crime was witness identification. Thus, it was imperative to establish the validity of the witness identification and the photographic line up. Accordingly, we find where, as here, the identification of the defendant is not corroborated by circumstantial or direct evidence, the error in failing to grant the defendant a full *in camera* hearing on the admissibility of identification evidence is not harmless.

### *CONCLUSION*

We reaffirm the *per se* rule requiring the court to hold an *in camera* hearing when the state offers witnesses

whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification.

Pursuant to *State v. Simmons*, we remand the case for a circuit judge to hold an *in camera* hearing to determine: (1) whether, under the circumstances of this case, the identification evidence identifying Cheatham as the perpetrator under the photographic lineup procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification; and (2) whether the resulting in-court identification testimony was so tainted by a previous illegal identification as to require its suppression at trial.

Should it be determined upon an *in camera* hearing, that: (1) the pretrial photographic lineup identification was unduly suggestive; and/or (2) the in-court identification of Cheatham was the tainted product of the circumstances, it will follow as a matter of course that Cheatham is entitled to a new trial.

**REMANDED.**

CURETON and GOOLSBY, JJ., concur.