THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Garcay G. Williams,       
Appellant.
 
 
 

Appeal From Greenville County
John C. Few, Circuit Court Judge

Unpublished Opinion No. 2003-UP-341
Submitted March 26, 2003  Filed 
 May 20, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Tara S. Taggart, of Columbia, 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson 
 and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; 
 and Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:  Garcay G. Williams was convicted of two counts of robbery.  
 He was sentenced to fifteen years for each  count, to be served concurrently.  
 Williams appeals his convictions asserting the trial court erred in (1) failing 
 to exclude a pre-trial identification by a victim based on a photographic lineup 
 which Williams claims was unduly suggestive and conducive to irreparable mistaken 
 identification and (2) refusing to grant Williams a hearing regarding in-court 
 identification by a second victim.  We affirm. [1] 
FACTS/PROCEDURAL BACKGROUND
On April 17, 2000, Robyn Bennett went to Harlows Hair Salon in Greenville, 
 South Carolina, to have a manicure done by Dot Ann Johnson, a nail technician.  
 Bennetts appointment was at 7:00 p.m.  A little after 7:00, a black man entered 
 the salon and walked up to the counter, which was two and a half to three feet 
 from where the women were sitting.  The salon is lit by fluorescent lights.  
 In addition, Johnson had an over the desk light, which was bright.  All 
 of these lights were turned on when the man entered the salon.
 As the man leaned over the counter, Johnson turned to him and asked 
 if she could help him with anything.  The man declared: [G]ive me your money.  
 Johnson did not understand what he said so she asked: [W]hat? The man repeated 
 the demand.  Johnson informed him she did not have any money.  Bennett stated: 
 I have twenty dollars.  The man ordered Bennett to give the money to him.  
 After Bennett gave the man the twenty dollars, he looked at Johnson and again 
 told her to give him her money.  Johnson reiterated that she did not have any 
 money.  Johnson opened the drawer beside her desk and showed the man that she 
 only had checks and some coins in a change tray.  The man asked for Johnsons 
 change, which she handed to him.  The man left the salon at that time.
Johnson estimated this entire exchange took anywhere from a minute 
 up to two minutes.  According to Johnson, there was nothing obstructing her 
 view of the mans face.
 Johnson called the police.  She gave a description of the man who 
 had robbed them.  She stated he was a black male in his thirties wearing jeans 
 and a white shirt with stripes.  She noted the man was probably six foot and 
 maybe a hundred and eighty pounds.
On April 26, Detective Ervin Brewster, with the Greenville Police 
 Department, brought a photographic lineup to the salon for Johnson to view. 
 Six photographs were included in the lineup.  Detective Brewster asked Johnson 
 if the person that robbed her was in the photo lineup.  Johnson chose number 
 four, a picture of Williams.  Johnson insisted she was certain that was the 
 same man who robbed her.  Johnson signed the back of the picture.
Williams was charged with two counts of robbery.  Prior to trial, Williams 
 moved to suppress any out-of-court and in-court identification made by Johnson 
 and Bennett.  He claimed the photographic lineup shown to Johnson was unduly 
 suggestive in that Williamss picture was the lightest picture of all.  Williams 
 maintained:

All the other pictures, of that six person array, ha[ve] 
 shadows on their faces. . . . [T]his photographic lineup was done in such a 
 way that it points directly to my client.  His picture stands out over and above 
 all others just by the simple fact that his picture is not tinted as darkly 
 as all the others.  And I submit to the court that that in itself is unduly 
 suggestive. . . . Because of the unduly suggestive nature of the out-of-court 
 identification by Ms. Johnson, I move to suppress an in-court identification 
 [by] her as well.

Williams then averred: [I]nasmuch as there has not been 
 any prior identification made by Ms. Bennett, I would submit and move to suppress 
 any in-court identification that she may make today from the witness stand. 
 The judge held an in camera hearing to determine the admissibility 
 of the identification by Johnson. 
Johnson testified at the hearing.  When asked 
 if there was anything about the photograph itself that led her to choose number 
 four, Johnson responded: No. . . . I just looked at his face.  The Solicitor 
 queried Johnson as to whether she was sure that this is the fellow who came 
 in and robbed you.  Johnson answered: Yes.  Although Johnson agreed with 
 defense counsel that Williamss photo was shaded different, she declared that 
 was not the reason why she chose his picture.  She stated: I just remember 
 his face.  Johnson said she knew immediately that it was him.
Detective Brewster testified he assembled the photographic lineup.  
 He selected photos to use in the lineup based on the description of the suspect. 
 The six people in the photos were all the same sex and race with similar facial 
 hair.  Because Detective Brewster had already developed Williams as a suspect, 
 he attempted to find other pictures that matched Williamss photograph.  Detective 
 Brewster conceded the lighting in Williamss picture was somewhat different 
 from the other five in the lineup.  He stated the lighting on Williamss face 
 was brighter than the lighting on the other five. He said Johnson viewed the 
 photos for approximately one minute prior to choosing Williamss photo as depicting 
 the person that robbed her.
The circuit judge ruled the pre-trial photographic lineup was not unduly suggestive.  
 He acknowledged that when you look at the tint of [Williamss] face or the 
 glare really off of his face, its different from that of the other five, but 
 there are also differences among the other five.  The judge discussed the various 
 differences among all of the photographs.  He concluded: I just think that 
 the difference in tinting of Mr. Williams photograph is not unlike the other 
 differences among these photographs . . . . I think the differences that you 
 point out are there, but theyre not substantial.  The court further held the 
 reliability of the identification is such that no substantial likelihood of 
 misidentification existed.
At trial, Johnson and Bennett identified Williams as the man who robbed them.  
 When shown the photographic lineup bearing Williamss picture, Johnson testified 
 she identified photograph number four, a picture of Williams, as depicting the 
 man who robbed the two women.  The court admitted the lineup and pre-trial identification 
 by Johnson into evidence.  In addition, the court overruled defense counsels 
 objection to the in-court identification by Bennett.  Williams was convicted 
 of both counts of robbery.
LAW/ANALYSIS
I.  Photographic 
 Lineup
Williams argues the photographic lineup was unduly suggestive and 
 conducive to irreparable mistaken identification by Johnson. 
A.  Preservation of Issue
Prior to trial, the judge held an in camera hearing to address 
 the pre-trial identification by Johnson.  The judge found: (1) the lineup was 
 not unduly suggestive and (2) the reliability of the identification was such 
 that no substantial likelihood of misidentification existed.  The judge determined: 
 So Ill allow it.  At trial, Johnson identified Williams from the photographic 
 lineup (States Exhibit #1) and made an in-court identification of Williams 
 as the man who robbed the two women.  Defense counsel did not object at that 
 time.
A ruling in limine is not a final ruling on the admissibility 
 of evidence.  State v. Griffin, 339 S.C. 74, 528 S.E.2d 668 (2000); State 
 v. Hughes, 336 S.C. 585, 521 S.E.2d 500 (1999).  Generally, a motion in 
 limine seeks a pre-trial evidentiary ruling to prevent the disclosure 
 of potentially prejudicial matter to the jury.  See State v. Floyd, 
 295 S.C. 518, 369 S.E.2d 842 (1988).  A pre-trial ruling on the admissibility 
 of evidence is preliminary, and is subject to change based on developments at 
 trial.  Id.  Unless an objection is made at the time the evidence is 
 offered and a final ruling made, the issue is not preserved for review.  State 
 v. Schumpert, 312 S.C. 502, 435 S.E.2d 859 (1993).
B.  Analysis of Photographic Lineup under Neil v. Biggers
Assuming arguendo the issue is preserved, we nevertheless find the 
 trial court did not err in failing to suppress the pre-trial identification 
 and in allowing the in-court identification by Johnson.
Generally, the decision to admit an eyewitness identification 
 is at the trial judges discretion and will not be disturbed on appeal absent 
 an abuse of discretion, or the commission of prejudicial legal error.  State 
 v. Moore, 343 S.C. 282, 540 S.E.2d 445 (2000).
The standard for determining the admissibility of 
 a pre-trial photographic identification is whether the identification procedure 
 was so impermissibly suggestive as to give rise to a very substantial likelihood 
 of irreparable misidentification.  Neil v. Biggers, 409 U.S. 188 (1972); 
 State v. Gambrell, 274 S.C. 587, 266 S.E.2d 78 (1980); State v. Patterson, 
 337 S.C. 215, 522 S.E.2d 845 (Ct. App. 1999); see also Simmons v. 
 United States, 390 U.S. 377 (1968) (holding each case must be considered 
 on its own facts, and convictions based on eyewitness identification at trial 
 following a pre-trial identification by photograph will be set aside on that 
 ground only if the photographic identification procedure was so impermissibly 
 suggestive as to give rise to very substantial likelihood of irreparable misidentification).  
 A criminal defendant may be deprived of due process of law by an identification 
 procedure that is unnecessarily suggestive and conducive to irreparable mistaken 
 identification.  Stovall v. Denno, 388 U.S. 293 (1967); State v. Mansfield, 
 343 S.C. 66, 538 S.E.2d 257 (Ct. App. 2000).  An in-court identification of 
 an accused is inadmissible if a suggestive out-of-court identification procedure 
 created a very substantial likelihood of irreparable misidentification.  Manson 
 v. Brathwaite, 432 U.S. 98 (1977); State v. Cheeseboro, 346 S.C. 
 526, 552 S.E.2d 300 (2001).
Only if the procedure was suggestive need the court consider the second prong--whether 
 there was a substantial likelihood of irreparable misidentification.  Moore, 
 343 S.C. at 287, 540 S.E.2d at 447-48.  The identification need not be excluded 
 as long as under all the circumstances the identification was reliable notwithstanding 
 any suggestive procedure.  Id.  An identification may be reliable under 
 the totality of the circumstances even when a suggestive procedure has been 
 used.  State v. Blassingame, 338 S.C. 240, 525 S.E.2d 535 (Ct. App. 1999).  
 Even if some degree of suggestiveness exists in the pre-trial identification, 
 suppression of the identification is not automatically required.  State v. 
 Stewart, 275 S.C. 447, 272 S.E.2d 628 (1980).  Suggestiveness alone does 
 not mandate the exclusion of evidence.  Blassingame, 338 S.C. at 251, 
 525 S.E.2d 541.  The query posited is whether under the totality of the circumstances 
 the identification was reliable even though the confrontation procedure may 
 have been suggestive.  Stewart, 275 S.C. at 450, 272 S.E.2d at 629.    
 Reliability is the linchpin in determining the admissibility of identification 
 testimony.  Mansfield, 343 S.C. at 78, 538 S.E.2d at 263.
The following factors are to be considered in evaluating the totality of the 
 circumstances to determine the likelihood of a misidentification: (1) the witnesss 
 opportunity to view the perpetrator at the time of the crime; (2) the witnesss 
 degree of attention; (3) the accuracy of the witnesss prior description of 
 the perpetrator; (4) the level of certainty demonstrated by the witness at the 
 confrontation; and (5) the length of time between the crime and the confrontation.  
 Cheeseboro, 346 S.C. at 541, 552 S.E.2d at 308.  The corrupting effect 
 of a suggestive identification is to be weighed against these factors.  Patterson, 
 337 S.C. at 230, 522 S.E.2d at 852.  After the trial court determines the witnesss 
 identification is reliable, the witness is permitted to testify before the jury.  
 Id.
Under the first prong of the Neil v. Biggers 
 test, there is no evidence the photographic lineup was unduly suggestive.  Williams 
 complains his photograph was the only one with distinctive shading.  However, 
 the court examined the photographic array and found there were also differences 
 among the other five photographs that made each one stand out.  The subjects 
 in the photographs are similar in appearance and physical characteristics.  
 All of the men are wearing similarly tinted orange uniforms from the jail 
 and standing in front of the same colored background.  The judge noted: I 
 just think that the difference in tinting of Mr. Williams photograph is not 
 unlike the other differences among these photographs. Detective Brewster used 
 a photo of Williams to help him select which pictures to use in the lineup.  
 Johnson testified Detective Brewster did not expressly or implicitly suggest 
 which photograph was of a suspect or which photograph she should choose.  She 
 stated the detective made no suggestions, representations, or encouraging remarks 
 to her regarding the photographs.  Johnson was certain of her identification 
 and based her certainty on remembering Williamss face.  In fact, when asked 
 on what she was basing her identification of him, Johnson replied: I probably 
 will never forget that face.  Johnson professed she chose photograph number 
 four because that was him, not because the lighting was different.
Moreover, even if the identification procedure used was unduly suggestive, 
 we find Johnsons identification of Williams nevertheless reliable in light 
 of the totality of the circumstances surrounding the confrontation.  The record 
 reflects Johnson had at least a minute and a half to two minutes to view Williams 
 face-to-face from a close proximity of two to three feet. During this time, 
 the fluorescent lights in the salon, as well as a desk lamp, were turned on.  
 Johnson indicated the lights in the salon were probably a little bit brighter 
 than the lights in the court room.  There were no visual obstructions which 
 kept Johnson from seeing the robber.  Because she was the victim of a crime 
 as opposed to a mere passerby, Johnsons degree of attention was presumably 
 acute.  See State v. Ford, 278 S.C. 384, 296 S.E.2d 866 (1982).  
 Johnsons description of Williams was consistent with his appearance.  When 
 she was shown the photographic lineup, Johnson expressed absolute certainty 
 that Williams was the perpetrator.  The identification took place only nine 
 days after the robbery.  Finally, Johnsons identification of Williams was independently 
 corroborated by Homer Ferrells admission that he drove Williams to the salon 
 on April 17 and watched him walk in the door of the salon.  About three minutes 
 later, when Williams exited the salon, he got in Ferrells car.  Ferrell professed: 
 [Williams] said he had got a few dollars from that girl.  Concomitantly, there 
 is no substantial likelihood of misidentification under the second prong of 
 the Neil v. Biggers analysis.
We hold Johnsons pre-trial identification of Williams was reliable under the 
 totality of the circumstances.  The identification satisfies the criteria of 
 State v. Stewart and Neil v. Biggers.  The trial court properly 
 denied Williamss motion to suppress Johnsons pre-trial identification of him.  
 Additionally, the judge did not err in allowing the in-court identification.
II.  In-Court Identification 
 by Bennett
Williams contends the trial judge erred in refusing to hold a hearing 
 under Neil v. Biggers regarding the in-court identification by Bennett.  
 This assertion is meritless.
During a pre-trial hearing, defense counsel argued an in-court identification 
 by Bennett constituted an unduly suggestive showup.  Defense counsel alleged: 
 Were just basically looking at the possibility of a substantial likelihood 
 of a wrong identification in this particular situation, especially where memories 
 fade after apparently nineteen months and that shes not been given the opportunity 
 to choose the individual or not [in a pre-trial lineup].  The Solicitor noted 
 thats excellent cross-examination.  The Solicitor suggested:

What I would propose to do would be call Ms. Bennett during the trial, go through 
 her, with her on direct what would be the Neal v. Biggers issues.  Before 
 I make any identification, approach the bench.  If theres any cross examination 
 necessary, then or if the court has any questions, we could excuse the jury 
 rather than doing it twice.

The court concluded: Im inclined to believe that shes permitted to make 
 this identification.
 Bennett was the first person to testify at trial.  During Bennetts 
 testimony, the following colloquy took place:

[Solicitor]:  Have you been asked to identify anybody in 
 this case?
[Bennett]:  Not until earlier today.
[Solicitor]:  Okay.  And earlier today, you and I talked 
 about that, is that . . . correct?
[Bennett]:  Yes.

The Solicitor asked if Bennett could identify the man who robbed her. Bennett 
 said she could.  The Solicitor then asked if the man who robbed her was in the 
 courtroom.  Bennett replied: Yes.  At that time, defense counsel objected.  
 A bench conference was held.  Thereafter, defense counsel declared: Id like 
 a chance toId like to be heard on this issue.  Ill be quick in front ofoutside 
 the presence of the jury.  The judge granted defense counsels request.
Defense counsel questioned Bennett in detail as to the basis of her identification 
 of Williams.  He pointed out: (1) Bennetts description of the robber had not 
 mentioned facial hair, style of hair cut, or color of stripes on his shirt; 
 (2) the robbery occurred nineteen months earlier; (3) the robbery lasted only 
 one and a half to two minutes; and (4) Bennett was scared at the time.  Defense 
 counsel queried Bennett regarding the identification that had occurred earlier 
 on the day of trial.  Bennett stated she and the Solicitor walked into the courtroom 
 and the Solicitor asked if she saw the defendant. Bennett indicated she did.  
 According to Bennett, [h]e was sitting beside the door onfrom my perspective, 
 now on the right side of the door in the back of the room by himself.  Bennett 
 said there was more than one black man in the courtroom at the time.  The following 
 exchange occurred:

[Defense Counsel]:  How did that manthe other man, the 
 other black gentleman that you saw, how did he compare at all with the person 
 that came in that day?  Did he have the same general appearance?
Ms. Bennett:  Well, in the terms that he was a clean-cut, 
 normal looking person, yes, he was similar.  In this instant, I remembered this 
 man.  And I looked at him for two minutes, when I was scared to death.  I knew 
 exactly who he was.  Ill probably remember who he is for the next fifty years 
 of my life.
[Defense Counsel]:  One second please.  Nothing further, 
 your Honor.  Thank you.
The Court:  All right.  Any otherany objections you 
 want to make?
[Defense Counsel]:  No, your Honor.
The Court:  All right.  The objections that you made before 
 are overruled anyway.

(Emphasis added).  The jury was brought back into the court room and the Solicitor 
 continued the direct examination of Bennett.  She identified the defendant as 
 the man who robbed her.  Bennett indicated she was a hundred percent certain 
 Williams was the man who robbed her.
Our courts have repeatedly addressed a defendants right to have evidentiary 
 hearings outside the presence of the jury.  See State v. Cheatham, 
 349 S.C. 101, 561 S.E.2d 618 (Ct. App. 2002).  In Cheatham, this Court 
 held: We reaffirm the per se rule requiring the court to hold 
 an in camera hearing when the state offers witnesses whose testimony 
 identifies the defendant as the person who committed the crime and the defendant 
 challenges the in-court identification as being tainted by a previous illegal 
 identification.  Id. at 118, 561 S.E.2d at 627.
Williamss complaint that the judge refused to hold a hearing before Bennetts 
 in-court identification is not supported by the record.  Contrary to Williamss 
 contention, the court held a hearing outside of the jurys presence to hear 
 further testimony about the facts and circumstances of Bennetts identification 
 and to consider any additional objections.  Defense counsel was allowed to fully 
 cross-examine Bennett.  At the conclusion of the cross-examination, defense 
 counsel declared he had no further questions or objections.
Clearly, the judge held a hearing to determine whether Bennett could make an 
 in-court identification.  The judges decision to allow the in-court identification 
 was proper.
CONCLUSION
Accordingly, Williamss convictions are
 AFFIRMED.
 CURETON, ANDERSON, and HUFF, JJ., concur.

 
 [1] 
 We decide this case without oral argument pursuant to Rule 215, SCACR.