580 S.E.2d 149

**The STATE, Respondent,**

v.

**Gerrod LEWIS, Appellant.**

No. 3600.

Court of Appeals of South Carolina.

Heard Nov. 7, 2002.

Decided Feb. 18, 2003.

Rehearing Denied May 21, 2003.

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Christie Newman Barrett; and Solicitor Walter M. Bailey, Jr., for Respondent.

CONNOR, J.:

Gerrod Lewis was indicted for first degree criminal sexual conduct, two counts of kidnapping, grand larceny of a vehicle, and armed robbery. He appeals the jury's verdict finding him guilty on all charges. We affirm in part, reverse in part, and remand.

## FACTS

On June 21, 1999, Jane Doe[1] and Gill Armstrong were traveling with their infant daughter from Virginia to their home in Florida. They stopped at a hotel off I–95 in St. George about 11:00 p.m. After checking in, Armstrong went to a nearby restaurant to get some food. When he returned, he noticed three men standing in the breezeway near his room. Assuming they were hotel guests, he proceeded back to his room. After putting the food in the room, Armstrong went back outside to the vending machines for drinks.

At the vending machine, a man whom Armstrong later identified as Timothy Washington, placed a gun to his head and demanded money. Lewis and Shermaine Elmore were with Washington. Armstrong recognized the three as the same men he had seen in the breezeway minutes earlier. The three assailants demanded that Armstrong take them to his room.

---

1. To protect the female victim's identity, she has been referred to as Jane Doe.

As the men entered the room, Doe was getting out of the shower clad only in a towel. Their daughter was asleep on the bed. The assailants demanded money. When they realized Armstrong and Doe had only fourteen dollars, they became enraged and began searching the room. They did not find anything else in the room.

Lewis and Washington then took turns sexually assaulting Doe in the bedroom while Elmore held Armstrong at gunpoint in the bathroom. Washington then took Doe into the bathroom and sexually assaulted her in Armstrong's presence. Thereafter, the assailants took Armstrong's keys and stole his car. The car was found a few days later near St. George.

Lewis and Washington were tried together, and both were found guilty of all charges. The trial court sentenced Lewis to five years for grand larceny and thirty years concurrently on each of the remaining charges.

## ISSUES

I. Did the trial court err by failing to suppress Armstrong's in-court identification of Lewis?

II. Did the trial court err in refusing to allow Lewis to strike a juror previously stricken by his co-defendant?

## LAW/ANALYSIS

### I.

Lewis first argues he is entitled to a new trial because the trial court erred in failing to suppress the in-court identification Armstrong made of him. He contends the trial court erred in not holding a hearing to determine the reliability of the in-court identification and that the identification was unduly suggestive and unreliable. Lewis asserts the error in allowing the in-court identification was not harmless. We hold the trial court did not err in failing to hold a hearing and admitting the in-court identification of Lewis.

Armstrong was unable to return to South Carolina from Florida before the trial. Therefore, law enforcement had no opportunity to conduct a lineup prior to trial to determine if Armstrong could identify any of the three assailants.

Before jury selection Lewis's counsel asked the court to require police or the solicitor to conduct a photo lineup to determine if Armstrong could identify his client or, in the alternative, for the court to suppress any in-court identification of Lewis. The trial court refused.

Subsequently, Lewis requested an *in camera* hearing prior to Armstrong's in-court identification. He wanted the court to determine whether the identification was reliable. The trial court denied Lewis's motion.

An in-court identification of an accused is inadmissible if an out-of-court confrontation such as a showup, lineup, or photo array was so unduly suggestive that it created a very substantial likelihood of irreparable misidentification. *State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300 (2001), *cert. denied*, 535 U.S. 933, 122 S.Ct. 1310, 152 L.Ed.2d 219 (2002). The United States Supreme Court has crafted a two-pronged inquiry for the trial court to use in determining the admissibility of an out-of-court identification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). " '[A] court must first determine whether the identification process was unduly suggestive. . . . [It] next must determine whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.' " *State v. Moore*, 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000) (quoting *Curtis v. Commonwealth*, 11 Va.App. 28, 396 S.E.2d 386, 388 (1990)).

Recently, the South Carolina Supreme Court has set forth the rule trial courts should use in deciding the reliability of in-court identifications. *State v. Ramsey*, 345 S.C. 607, 550 S.E.2d 294 (2001). In *Ramsey*, the Court stated:

> Where identification is concerned, the general rule is that a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime, and the defendant challenges the in-court identification as being tainted by a previous, illegal identification or confrontation.

*Id.* at 613, 550 S.E.2d at 297. The Court limited this rule to situations where an in-court identification was the product of an unlawful confrontation or lineup. *Id.*

However, in this case the police did not conduct any kind of pretrial identification which could have contributed to a misidentification of Lewis during trial. Our research reveals no South Carolina case requiring a trial court to conduct an *in camera* hearing to determine the reliability of an in-court identification, where law enforcement has conducted no pretrial out-of-court identification. Nor has Lewis cited any such case.

■ "Generally, the decision to admit an eyewitness identification is at the trial judge's discretion and will not be disturbed on appeal absent an abuse of such, or the commission of prejudicial legal error." *Moore,* at 288, 540 S.E.2d at 448. We find no abuse of discretion or prejudicial legal error because the trial court failed to conduct a *Neil v. Biggers* hearing or to suppress Lewis's in-court identification.

Ultimately, the reliability and credibility of the in-court identification was a question for the jury, as it was the sole judge of the facts and the credibility of the witnesses. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001). Lewis's counsel subjected Armstrong to extensive cross-examination concerning the accuracy and reliability of his in-court identification. Armstrong explained the extent of his opportunity to view Lewis at the time of the crime, the degree of attention he paid, and the accuracy of his prior description of Lewis. In his direct testimony, Armstrong unhesitatingly identified Lewis as one of the assailants, and even though he admitted that a year and a half had elapsed since the crime, he testified he was nevertheless "positive" about his identification.

Therefore, the trial court committed no error on this issue.

## II.

■ Lewis additionally argues he is entitled to a new trial because the trial court refused to allow him to strike a juror previously stricken by his co-defendant.

During jury selection Lewis exercised peremptory strikes on nine white jurors. His co-defendant, Washington, also separately struck nine white jurors, including juror 304, a white female. At the end of jury selection, the State request-

228

ed a *Batson*[2] hearing. Each defendant separately presented reasons for his respective strikes. Washington explained he struck juror 304 because she was a housewife. The trial court found several jurors, including juror 304, had been struck for reasons not race-neutral or gender-neutral.[3] The parties then began selecting a second jury.

Juror 304 was presented again. Washington accepted the juror, but Lewis attempted to strike her. At that point, the trial court asked the attorneys to approach the bench and told Lewis's attorney he could not strike the juror because the court had already held that the reason for the previous strike was pretextual. Lewis therefore accepted the juror. After finishing the second jury selection process, Lewis moved to quash the jury and re-select another jury because he was not allowed to exercise a peremptory strike. The following colloquy occurred:

> **Mr. Loy [Lewis's counsel]:** Your Honor, my motion is to strike the jury and re-pick based on the following, Your Honor: Juror Number 304 was called, when she was called I exercised a strike, struck her, you called us to sidebar, indicated as you had earlier ruled that that was not a race-neutral or gender-neutral strike.

> **The Court:** I did.

> **Mr. Loy:** That I couldn't strike her for any reason whatsoever, and in fact was compelled to seat her on the jury. I didn't want to make the argument there, I attempted to preserve my objection to that instruction by saying pursuant to your instruction at the bench. However, Your Honor, I think if I have independent grounds to strike her separate and apart from what we did last time—

> **The Court:** No, sir. You don't get to pick and choose. When you put on there that that's the reason you struck her the first time and I ruled that was not gender or race neutral, that means you cannot strike her. Now, put anything you want to on the record.

---

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. Lewis does not appeal the trial court's decision to quash the first jury after finding the parties exercised strikes in a discriminatory fashion.

**Mr. Loy:** That's my argument, Your Honor. My argument is that if I have independent reasons for striking her, such as if something—

**The Court:** I don't know what the independent reason is. You're stuck with what you gave me the first time. I had already ruled you couldn't put her, but I'll let you put anything you want to on the record.

**Mr. Loy:** I think, You[r] Honor, it's akin, although this is not the case, that if I had heard her in the hallway saying they ought to just hang both of those guys and be done with it, that I wouldn't be compelled to seat her on the jury. That's my argument, I think I should have been allowed to strike her.

**The Court:** I'll be glad to let you put down whatever independent reason you would have used.

**Mr. Loy:** Your Honor, the reason I would have used, the reason I would have struck her was based solely on her demeanor when she came forward on the manner in which she looked at our table versus the State's table entirely independent of what happened during our first jury selection process.

**The Court:** All right. Anything else?

**Mr. Loy:** No. That's it, Your Honor.

**The Court:** I deny your motion. Anything further?

**Mr. Loy:** Not from [sic] on behalf of Mr. Lewis, Your Honor.

■ Neither the State nor the defendant may exercise peremptory challenges in a racially discriminatory manner. *State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)). The United States Supreme Court let individual states fashion a remedy for striking a juror based upon race. *Batson,* 476 U.S. at 99 n. 24, 106 S.Ct. 1712.

In *State v. Jones,* 293 S.C. 54, 58, 358 S.E.2d 701, 704 (1987), *abrogated on other grounds by State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995), our Supreme Court held that if the trial court finds a *Batson* violation, "the process of selecting

the jury shall start *de novo.*" The Court stated, "members of the tainted jury and all persons who were struck shall be placed back in the jury venire. The jury selection process shall start anew using this 'reconstructed' venire." *Id.* at 58 n. 3, 358 S.E.2d at 704 n. 3.

Later, in *State v. Franklin,* 318 S.C. 47, 51, 456 S.E.2d 357, 359 (1995), the Court addressed the procedure the trial court should follow when "a party attempts to strike from the second venire a person previously ruled stricken in violation of *Batson.*" The Court recognized the *de novo* jury selection procedure established in *Jones* but held, to protect a venireperson's constitutional rights and to prevent rewarding a party for improper conduct, that it was not error for the trial court to disallow a party's second attempt to strike a juror who was previously improperly removed from the jury.

However, in this case, Lewis did not strike juror 304 during the first selection process. His co-defendant Washington did. Thus, Lewis argues he should have been able to strike juror 304, independent of his co-defendant's earlier actions. Lewis alleges the trial court erred in imputing the co-defendant's unconstitutional strike to him, thereby prohibiting Lewis from striking the juror. Moreover, he claims his strike could have been for an intervening, independent reason.

The State contends *Franklin* controls these facts because a defendant does not have the right to repeatedly strike a prospective juror on an unconstitutional basis. However, *Franklin* did not address a situation where co-defendants exercise strikes independent of each other. In *Franklin,* the issue facing the Court was the "claimed right [of an offending party] to unconstitutionally strike a prospective juror over and over again . . . ." *Id.* at 54, 456 S.E.2d at 361. The Court reasoned that allowing the trial court the discretion to seat an improper juror prevented " 'giv[ing] the offending party exactly what he wanted, namely,' a jury panel which unconstitutionally excludes a particular juror." *Id.* at 53, 456 S.E.2d at 360 (quoting *People v. Moten,* 159 Misc.2d 269, 603 N.Y.S.2d 940, 947 (N.Y.Sup.Ct.1993)).

Here, Lewis was not the "offending party." Lewis did not strike juror 304 during the first selection process. Furthermore, there is no evidence Lewis attempted to strike the

juror on an unconstitutional basis during the second selection process. The trial court's discretionary remedy for an improper peremptory strike must not infringe on either the juror's or the defendant's constitutional rights. *Id.* at 53, 456 S.E.2d at 360. Lewis is constitutionally entitled to a fair and impartial jury. S.C. Const. art. I, § 14; *see State v. Harris,* 340 S.C. 59, 62, 530 S.E.2d 626, 627 (2000) ("The Sixth and Fourteenth Amendments of the United States Constitution guarantee a defendant a fair trial by a panel of impartial and indifferent jurors."). Lewis's entitlement to an impartial jury was not met where the trial court prohibited Lewis from striking a juror he had not previously challenged.

Moreover, Lewis presented an intervening, independent reason to strike the juror. *See Franklin,* 318 S.C. at 54, 456 S.E.2d at 361 (stating a defendant is "not prohibited from bringing to light facts justifying striking the prospective juror which arose after the initial *Batson* hearing"). Lewis stated he attempted to strike the juror because of her demeanor when she came forward. However, the trial court did not even consider Lewis's explanation for the attempted strike, given the court's earlier ruling that Lewis was "stuck with what [he] gave [the trial court] the first time." This was error. Because Lewis did not strike the juror the first time, he should have been allowed to strike the juror the second time, subject to scrutiny by the court only if the State moved for a *Batson* hearing. He should also have been allowed to present evidence concerning an intervening reason and had the trial court rule on that.

The State contends the trial court "properly refused to allow Lewis to use subterfuge to discriminate against juror [number 304] for a second time." There is no evidence the reason advanced by Lewis to strike the juror was "subterfuge."

The trial court should have allowed Lewis to exercise a peremptory challenge during the second selection process given Lewis had not already stricken the juror and may have had an intervening reason to later strike the juror. Lewis should not have been held responsible for the unconstitutional strike exercised by his co-defendant. *Cf. State v. Carriker,*

269 S.C. 553, 238 S.E.2d 678 (1977) (finding the objections of one defendant are not imputable to a co-defendant).

## CONCLUSION

The trial court's denial of Lewis's motion to hold an in camera hearing to determine the reliability of an in-court identification is affirmed. However, based on the foregoing analysis concerning the jury selection, we reverse and remand this case for a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

STILWELL, J., concurs and ANDERSON, J., dissents in separate opinion.

ANDERSON, J., (dissenting):

I respectfully dissent. The majority concludes the trial court did not err by denying Lewis's request for an *in camera* hearing and the trial court should have allowed Lewis to strike a previously stricken juror. I disagree. I VOTE to AFFIRM.

### *FACTS/PROCEDURAL BACKGROUND*

On June 21, 1999, Jane Doe[4] and Gill Armstrong were traveling from Virginia to their home in Florida with their infant daughter. They checked in at the Economy Inn off I–95 in St. George around 11:00 p.m. Leaving Doe and the infant daughter in the hotel room, Armstrong went to the Huddle House to pickup food. When he returned, he noticed three men standing in the breezeway near his room. Assuming they were hotel guests, Armstrong proceeded to his room and was not suspicious of their presence. After putting the food in the hotel room, Armstrong went back outside to the nearby soda machines without completely closing his door.

At the soda machines, a man whom Armstrong identified as Timothy Washington placed a gun to his head. Gerrod Lewis and Shermaine Elmore accompanied Washington. Armstrong

---

4. To protect the female victim's identity, she has been referred to as Jane Doe.

recognized the three men as the same men he had seen in the breezeway a few minutes earlier. Washington demanded to go to Armstrong's hotel room.

As the men entered the hotel room, Doe was getting out of the shower clad only in a towel. The infant daughter was asleep on the bed. The men wanted money. When they realized Armstrong and Doe had only fourteen dollars, they became enraged and searched the room. Once they could not find anything of value, Lewis and co-defendant Washington took turns sexually assaulting Doe in the bedroom while co-defendant Elmore held Armstrong at gunpoint in the bath-room. Then Washington took Doe into the bathroom and sexually assaulted her in front of Armstrong. After sexually assaulting Doe, the men took Armstrong's keys and stole his car. The car was found burned a few days later near St. George.

## ISSUES

I. Did the trial court err by failing to suppress Arm-strong's identification of Lewis?

II. Did the trial court err in refusing to allow Lewis to strike a previously stricken juror?

## LAW/ANALYSIS

### I. Identification of Lewis

Lewis argues he is entitled to a new trial because the trial court erred in failing to suppress Armstrong's in-court identi-fication of him. Lewis contends the identification was unduly suggestive and unreliable, and the error was not harmless. I disagree.

### A. Line-up

Lewis asserts the trial judge's failure to suppress the identi-fication was error because the State refused to conduct a non-suggestive lineup before the defendant was brought into the courtroom for trial. I find this argument has no merit.

Before trial, Lewis made a motion to either require a photographic lineup or suppress any identification of him. In connection with the photographic lineup, his counsel stated,

We think as a matter of fundamental fairness [the solicitor's office] should have done a lineup, either live or in person.... They should still be compelled to do a photographic lineup. It's not something we have the opportunity to do, obviously as defense, but I do think as a matter of due process and fundamental fairness they should have done that.

In denying the motion for a photographic lineup, the trial judge explained, "I can't require the solicitors or the police officers to do a photo lineup. You know, in many cases there's not a photo lineup. And I don't know of any law that would require them to do it, so I have to deny your motion legally."

I agree with the trial judge. There is neither a law requiring the solicitor to conduct a photographic lineup, nor a law allowing the judge to order one. Thus, this issue has no merit.

### B. *In Camera* Hearing

Lewis alleges the trial court erred by denying his request for an *in camera* hearing to determine the reliability of Armstrong's identification of him in court. I agree.

The issue posited is novel. Precedentially and by rule language the issue of **pre-trial** mandatory *in camera* hearings for identification evidence is extant. Here, we analyze and decide whether an *in camera* hearing is mandatory in regard to identification evidence that relates solely to an IN-COURT IDENTIFICATION.

When Lewis's motion to compel a lineup was denied, he asked for an *in camera* hearing prior to the identification being made before the jury. The trial court denied Lewis's motion:

[Lewis's counsel]: My re-request at this point is for an in camera hearing prior to them doing that so the Court can make its own determination as to whether or not that's a reliable identification. If it's so unreliable under the circumstances, they shouldn't allow—

The Court: That means I'm going to have to try the case twice, which I'm not going to do. You've got your right to move during the trial at any time to suppress any evidence

or identification. I'm not going to have a hearing beforehand.

"The standard for determining the admissibility of a[n] ... identification is 'whether the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." ' " *State v. Patterson,* 337 S.C. 215, 228, 522 S.E.2d 845, 851 (Ct.App.1999) (citing *State v. Gambrell,* 274 S.C. 587, 590, 266 S.E.2d 78, 80 (1980); *see also Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). "A criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Blassingame,* 338 S.C. 240, 251, 525 S.E.2d 535, 541 (Ct.App.1999) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Patterson,* 337 S.C. at 228, 522 S.E.2d at 851–52).

In *Patterson,* we stated:

Some general guidelines emerge from these [pre-trial identification] cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." ... While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

337 S.C. at 228–9, 522 S.E.2d at 852 (quoting *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)) (brackets in original).

In *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App. 2000), this court articulated the rule:

To determine whether an identification is reliable, it is necessary to consider the factors set forth in *Neil v. Big-*

*gers:* 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the amount of time between the crime and the confrontation. The corrupting effect of a suggestive identification is to be weighed against these factors. After the trial court determines the witness's identification is reliable, the witness is permitted to testify before the jury.

*Mansfield,* 343 S.C. at 78–79, 538 S.E.2d at 263 (internal citations omitted).

In *U.S. v. Hill,* 967 F.2d 226 (6th Cir.1992), the Sixth Circuit Court of Appeals held the factors in *Neil v. Biggers* apply to in-court identifications as well as pre-trial identifications. The court elucidated:

In this case, the court had to make an *ex ante* determination of whether to allow a witness, who had never before positively identified the defendant in person, to make an identification in court. We hold that the *Biggers* analysis applies to such in-court identifications for the same reasons that the analysis applies to impermissibly suggestive pre-trial identifications. The due process concerns are identical in both cases and any attempt to draw a line based on the time the allegedly suggestive identification technique takes place seems arbitrary. All of the concerns that underlie the *Biggers* analysis, including the degree of suggestiveness, the chance of mistake, and the threat of due process are no less applicable when the identification takes place for the first time at trial.

*Id.* at 232.

"[While] there was no obligation to stage a lineup, . . . there was, however, an obligation to ensure that the in-court procedure here did not simply amount to a show-up." *U.S. v. Archibald,* 734 F.2d 938, 941 (2d Cir.1984).

In the recent case of *State v. Cheatham,* 349 S.C. 101, 561 S.E.2d 618 (Ct.App.2002), we held:

Where there is an issue as to whether or not an in-court identification by a witness is of independent origin and based upon observations of a suspect other than in the

course of any improper confrontation or line-up, the defendant is entitled to an *in camera* hearing. Thus, our supreme court has "adopted a *per se* rule requiring the court to hold an *in camera* hearing when the state offers witnesses whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification."

*Id.* at 116, 561 S.E.2d at 626 (citing *State v. Williams*, 258 S.C. 482, 485, 189 S.E.2d 299, 300 (1972); *State v. Simmons*, 308 S.C. 80, 82–83, 417 S.E.2d 92, 93 (1992); *State v. Cash*, 257 S.C. 249, 185 S.E.2d 525 (1971)); *see also State v. Ramsey*, 345 S.C. 607, 613, 550 S.E.2d 294, 297 (2001) (stating the general rule that a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification).

Further, "[h]earings on the admissibility of confessions or statements by an accused, and pretrial identifications of an accused shall in all cases be conducted out of the hearing of the jury." Rule 104(c), SCRE. The rule "requires all hearings regarding the admissibility of pretrial identifications (to include any assertion that an in-court identification should be excluded as a result of a pretrial identification) to be heard outside the presence of the jury." *Cheatham*, 349 S.C. at 115–6, 561 S.E.2d at 626 (citing *Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992)). "Rule 104(c) unambiguously mandates hearings on the admissibility of out of court identifications of the accused shall in all cases be held outside the presence of the jury." *Id.* at 117, 561 S.E.2d at 627.

I respectfully remind the Bench and Bar of the mandate to hold an *in camera* hearing to determine the reliability of an in-court identification when requested. In *Cheatham*, we edified: "We reaffirm the *per se* rule requiring the court to hold an *in camera* hearing when the state offers witnesses whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification." *Id.* at 117–18, 561 S.E.2d at 627.

The judge was required to hold an *in camera* hearing to establish the reliability of the in-court identification. Experimentally and realistically, the conduct of the criminal trial should be imbued with fairness and equanimity to all parties. In a trial setting, I conclude that basic rules of judicial veracity mandate an *in camera* hearing on the admissibility of the in-court identification of the accused. To allow the factfinder to hear the in-court identification testimony **BEFORE** admission into evidence stretches credulity because in the event of **INADMISSIBILITY,** the jury has already heard the testimony in full. The inquiry then is the efficacy of the judge's ruling striking testimony and instructing the jury to disregard the testimony. The rule promulgated by the majority is a prosecutorial halcyonian conquest.

Thus, the denial of the motion to suppress was error without an *in camera* hearing. It does not follow, however, that Lewis is entitled to a new trial. I must determine if the error was harmless.

### C. Harmless Error

"[I]f the identification is corroborated by either circumstantial or direct evidence, then the harmless error rule might be applicable." *State v. Simmons,* 308 S.C. 80, 83, 417 S.E.2d 92, 94 (1992) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Cheatham,* 349 S.C. at 117, 561 S.E.2d at 627 (stating *Simmons* rule that harmless error rule may be applicable if identification is corroborated by either circumstantial or direct evidence).

In *State v. Ramsey,* 345 S.C. 607, 550 S.E.2d 294 (2001), the defendant did not challenge the testimony of three witnesses who testified they had "no doubt" Ramsey was wearing a striped sweater on the day of the murder. *Id.* at 614, 550 S.E.2d at 298. Given this direct evidence, our supreme court held that failure to conduct an *in camera* hearing was harmless error.

Similarly in the present case, there was direct evidence that corroborated Armstrong's identification of Lewis. Even without Armstrong's testimony, the State presented co-defendant Elmore who testified in detail about Lewis's involvement in the crime. Elmore said that he, Lewis, and Washington had walked to the Economy Inn from a nearby convenience store. He verified the details of the occurrence in the hotel room,

including the fact that Lewis sexually assaulted Doe. Thus, even though the trial judge erred in not conducting the *in camera* hearing, the error was harmless and does not require reversal.

## II. Viability of Previously Stricken Juror

Lewis claims he is entitled to a new trial based on the court's refusal to allow him to strike a previously stricken juror. I disagree.

During jury selection, Lewis's counsel struck nine white jurors. Co-defendant Washington's counsel also struck nine white jurors, including juror number 304, a white female. At the end of the selection, the State requested a *Batson*[5] hearing. Lewis and Washington's attorneys separately presented their reasons for each of the strikes. The State argued the explanations were a pretext for purposeful discrimination. The judge found that several jurors, including juror number 304, had been struck for pretextual reasons.

Juror number 304 was called again when the second jury was selected. Washington's attorney accepted the juror, but Lewis's attorney attempted to strike her. At that point, the trial judge asked the attorneys to approach the bench and told Lewis's lawyer he could not strike juror number 304 for any reason. Lewis's lawyer then accepted the juror. After the jury was excused, Lewis's counsel moved to strike the jury and re-pick because he was denied his right to exercise a peremptory strike. The following colloquy occurred:

> Mr. Loy [Lewis's counsel]: Your Honor, my motion is to strike the jury and re-pick based on the following, Your Honor: Juror Number 304 was called, when she was called I exercised a strike, struck her, you called us to sidebar, indicated as you had earlier ruled that that was not a race or gender-neutral strike.
>
> The Court: I did.
>
> Mr. Loy: That I couldn't strike her for any reason whatsoever, and in fact was compelled to seat her on the jury. I didn't want to make the argument there, I attempted to preserve my objection to that instruction by saying pursuant to your instruction at the bench. However, Your Honor,

---

5. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

I think if I have independent grounds to strike her separate and apart from what we did last time—

The Court: No, sir. You don't get to pick and choose. When you put on there that that's the reason you struck her the first time and I ruled that was not gender or race neutral, that means you cannot strike her. Now, put anything you want to on the record.

Mr. Loy: That's my argument, Your Honor. My argument is that if I have independent reasons for striking her, such as if something—

The Court: I don't know what the independent reason is. You're stuck with what you gave me the first time. I had already ruled you couldn't put her, but I'll let you put anything you want to on the record.

Mr. Loy: I think, You[r] Honor, it's akin, although this is not the case, that if I had heard her in the hallway saying they ought to just hang both of those guys and be done with it, that I wouldn't be compelled to seat her on the jury. That's my argument, I think I should have been allowed to strike her.

The Court: I'll be glad to let you put down whatever independent reason you would have used.

Mr. Loy: Your Honor, the reason I would have used, the reason I would have struck her was based solely on her demeanor when she came forward on the manner in which she looked at our table versus the State's table entirely independent of what happened during our first jury selection process.

The Court: All right. Anything else?

Mr. Loy: No. That's it, Your Honor.

The Court: I deny your motion. Anything further?

Mr. Loy: Not from [sic] on behalf of Mr. Lewis, Your Honor.

In *Batson v. Kentucky*, 476 U.S. 79, 80, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court declared striking a juror solely on the basis of race is unconstitutional. *Batson* left the remedy for striking a juror based only upon race to each state. *Batson*, 476 U.S. at 99, n. 24, 106 S.Ct. 1712. South Carolina first addressed the remedy for *Batson* violations in *State v. Jones*, 293 S.C. 54, 358 S.E.2d 701 (1987) (*abrogated on other grounds by State v. Chapman*, 317 S.C.

302, 454 S.E.2d 317 (1995)). In *Jones*, our supreme court held that when there is a *Batson* violation, the jury shall be quashed and "the process of selecting the jury shall start de novo." *Jones*, 293 S.C. at 58, 358 S.E.2d at 704. The court stated "members of the tainted jury and all persons who were struck shall be placed back in the jury venire [and][t]he jury selection process shall start anew using this 'reconstructed' venire." *Id.* at 58, n. 3, 358 S.E.2d at 704, n. 3.

In *State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995), our supreme court addressed the procedure when a party attempts to strike from the second venire a person previously stricken in violation of *Batson*. The court noted "[t]he majority of jurisdictions addressing the question of whether the trial judge may seat a juror improperly excluded in violation of *Batson* have found no error in seating such a juror. The rationale for allowing the trial judge the discretion to seat the improper juror is sound." *Franklin*, 318 S.C. at 52, 456 S.E.2d at 360. The court quoted *People v. Moten*, 159 Misc.2d 269, 603 N.Y.S.2d 940 (1993) as follows:

To hold otherwise would inadvisably reward a party for his own improper conduct, as would the declaration of a mistrial, which, in my view is an inappropriate remedy where the court is confronted with a valid *Batson* ... challenge. The declaration of a mistrial, as an alternative to a difficult decision involving a remedy for a *Batson* ... violation, merely avoids the critical issue and is inappropriate since such a declaration would *give the offending party exactly what he wanted, namely, a different jury panel.* Thus, it would reward him for the very discrimination which *Batson* ... [was] designed to prevent.

*Franklin*, 318 S.C. at 52, 456 S.E.2d at 360 (quoting *Moten*, 603 N.Y.S.2d at 947) (brackets in original).

The court further noted that "the defendant's constitutional right to a fair and impartial jury is [not] in any way violated by this procedure." *Id.* at 53, 456 S.E.2d at 360. The court held that "once a new venire has been selected ... it is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case and, as long as neither party's constitutional rights are infringed, that remedy may include the seating of an improperly challenged juror." *Id.* at 53, 456 S.E.2d at 360 (citing *Jefferson v. State*, 595 So.2d 38, 41 (Fla.1992)).

In the present case, the jury selection process began anew after the first jury was set aside. Lewis does not challenge the trial judge's ruling that juror number 304 was first stricken in violation of *Batson*. Instead, he professes he had an independent reason for striking the juror during the second jury selection, namely "her demeanor when she came forward on the manner in which she looked at our table versus the State's table entirely independent of what happened during our first jury selection process."

The trial judge should have allowed Lewis to state on the record his reason(s) for wanting to strike the juror during the second jury selection and not after the jury selection was completed. However, there was no error in seating the juror. Lewis was not denied his peremptory challenge. Instead, he was prohibited from exercising it in a racially discriminatory manner. The trial judge properly refused to allow Lewis to discriminate against juror number 304 during the second jury selection. Further, I find no evidence that Lewis suffered any prejudice from having juror number 304 on the jury.